FILED

2010 Mar-30  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| LARA W. SWINDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.  2:09-CV-1458-SLB |
| | ) | |
| JEFFERSON COUNTY | ) | |
| COMMISSION;  JEFFERSON | ) | |
| COUNTY, ALABAMA; JEFFERSON | ) | |
| COUNTY PERSONNEL  BOARD; | ) | |
| MIKE HALE, in his official capacity; | ) | |
| RANDY STONE, in his individual | ) | |
| capacity;  DAVID  NEWTON, in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on defendants' Motions to Dismiss. (Docs. 4, 6, 8, 11, and 12.)[1]  Plaintiff Lara W. Swindle has sued defendants – Jefferson County Commission; Jefferson County, Alabama; Jefferson County Personnel Board; Mike Hale, in his official capacity as Sheriff of Jefferson County; Randy Stone, in his individual capacity; and David Newton, in his individual capacity – alleging that defendants discriminated against her on the basis of her sex and retaliated against her for complaining about discrimination in violation of federal law.   Plaintiff also alleges state-law causes of action arising out of her alleged harassment by Stone and Newton.  Upon consideration of

---

[1] Reference to a document number, ["doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Motions to Dismiss filed by the Personnel Board, (doc. 8), and the County and the County Commission, (doc. 4), are due to be granted.  The Motions to Dismiss filed by Hale, Stone, and Newton, (docs. 6, 11, and 12), are due to be granted in part and denied in part.

## I. <u>MOTION TO DISMISS STANDARD</u>

When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true."  *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993) (citations omitted); *see also Rivell v. Private Healthcare Sys., Inc.*, 520 F.3d 1308, 1309 (11th 2008).

> [T]he complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, [545], 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295 (quoting *Twombly*, [550 U.S. at 556]).  This rule does not "impose a probability requirement at the pleading stage." *Twombly*, [550 U.S. at 556].  Instead, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element.  *Id*.  "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts*, 495 F.3d at 1296 (quoting *Twombly*, [550 U.S. at 556]).

*Rivell*, 520 F.3d at 1309-10.

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001)

2

(quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).  "[A] defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief."  *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-736 (11th Cir. 1998) (citing *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)), *cited in McClendon v. May*, 37 F. Supp. 2d 1371, 1375 (S.D. Ga. 1999).

## II.  STATEMENT OF FACTS

On May 22, 2006, plaintiff began working for Jefferson County Sheriff's Department as Laborer III.  (Doc. 1 ¶ 11.)  She alleges that Jefferson County paid her salary.  (*Id.*)  She also contends, "Defendants Jefferson County Personnel Board, Jefferson County, [and] Mike Hale in his official capacity as Sheriff of Jefferson County were the plaintiff's employer and/or joint employer," and, "These defendants employ more than fifteen (15) employees, and, therefore, are 'employers' for Title VII purposes."  (*Id.* ¶ 6.)

Plaintiff alleges that she was sexually harassed by defendants Randy Stone and David Newton from May 2006 until March 2008.  (*Id.* ¶ 12.)  Her Complaint contains the following allegations:

> 15.  In the Summer of 2006, Plaintiff, Deputy Newton and John White were at the scene of a wreck involving a biscuit truck and a coal truck on Highway 269.  After being outside at the scene for a while in the heat, they all got inside the truck to cool off.  White, who was in the front seat, had leaned back with his eyes closed and Deputy Newton motioned for Plaintiff, who was in the back seat, to unbutton her top.  He turned around to her while White's eyes were closed, and gestured to her with his shirt . . . to unbutton her shirt.

3

He mouthed to her for her to unbutton her shirt and let him see her breasts. John White did not see this as he was sleeping.  Plaintiff just sat there in shock.

16.  On several occasions when Plaintiff would ask Deputy Newton for time off from work, he would tell her they would discuss that later.  Newton would say, "I'm just going to have to take you in my office and spank that naked ass."  This occurred in June 2006 and September 2006.

17.  [O]ne day while Deputy Newton was driving Plaintiff home from work, he reached over and grabbed [her] breast outside of her clothing.  They were both wearing seat-belts.  This occurred between June and August 2006.  Deputy Newton was a very intimidating man and Plaintiff was scared to say anything.

18.  Plaintiff had little to no contact with any supervisory employees above Deputy Newton.

19.  From October 2006 to October 2007, on numerous occasions during the course of Plaintiff's employment, Deputy Newton would lean up against Plaintiff's backside where his genital area would touch her backside.

20.  Plaintiff would be inside of Deputy Newton's office and he would intentionally graze a breast with his hand.  Newton would intentionally grab Plaintiff's breasts.  Sometimes he would make it appear to be accidental and sometimes he would just blatantly grab her breast.

21.  Any time Plaintiff or other employees had a problem with Deputy Newton and expressed wanting to speak to a sergeant about it, they were told he would speak with them first or no you cannot see the sergeant.  This made Plaintiff fear discussing it with a sergeant . . . as she would be disobeying direct orders.  Plaintiff was very intimidated.

22.  On several occasions, Deputy Stone would pull his car up at the Sylvan Springs substation and motion for Plaintiff to come over to his car.  She walked to the passenger side and leaned down and he said, "[C]ome on and unbutton one or two buttons for me[,]" and "[W]hy don't you let me see those things?"  Plaintiff told him no.  Stone would also do this inside the substation while she was sitting at her desk.  Stone would touch his shirt trying to get her to unbutton her top.  She would shake her head and tell him no.  She informed Deputy Newton about Deputy Stone's behavior, and Newton responded by

saying[,] "[H]e's just a pervert."  This occurred after Deputy Newton had grabbed Plaintiff's breast.

23.   In February 2008, Plaintiff and Deputy Stone were on the roadblock checking driver[s'] licenses.  She was sitting in the driver's seat with the window rolled down.  Deputy Newton was standing in the road. Deputy Stone walked over to the window where she was sitting with her cell phone between her legs.  Stone reached in and said[,] "[G]ive me that phone[,]" and attempted to grab the phone between her legs.  She put her right hand on the phone and shooed his arm away with the left hand, instructing him to leave her phone alone.

24.   Also, some time in late Fall/early Winter 2007, at the Sylvan Springs substation, Deputy Stone had been touching Plaintiff's hair and then intentionally took her hand . . . and placed it on his crotch while saying, "[S]ee what you made happen?", referring to his erect penis.  Plaintiff told him to go take care of that on his own.  After that incident, Plaintiff made it a point not to be alone with Deputy Stone.  If she was about to be left alone in a room with him she would make sure she left.

(*Id.* ¶¶ 15-24.)  Plaintiff also contends that these acts constituted assault and battery, invasion of privacy, and outrage.  (*Id.* ¶¶ 63, 68, 72.)  She also claims that defendants Hale, the Commission, and the Personnel Board ratified and/or condoned the acts of Newton and Stone, and that these defendants negligently and/or wantonly trained, supervised, and/or retained Newton and Stone.  (*Id.* ¶¶ 65, 69, 73, 75-77.)

Plaintiff filed a complaint about the sexual harassment on March 26, 2008.  (*Id.* ¶¶ 25-26.)  She alleges that defendants Mike Hale and the Jefferson County Personnel Board retaliated against her.  (*Id.* ¶¶ 49-59.)  Specifically, she alleges:

49.   After Plaintiff complained of sexual harassment, she was retaliated against by being told she would have to work at the Bessemer office. Specifically, on March 26, 2008, Plaintiff met with Sgt. Saxon and Lt. Farley informing them of the problems she had been having with Deputy Stone and

Deputy Newton.  Lt. Farley told Plaintiff that she would be put to work in the Bessemer office and that Deputy Newton would continue on with the rest of the crew as usual.  Plaintiff discussed with Lt. Farley that this was unfair and she felt she was being punished for making complaints of sexual harassment. Plaintiff told Lt. Farley that it would cost her money to travel to and from work and Deputy David Newton was not having to move.  Lt. Farley changed his mind and placed Plaintiff on Administrative Leave.  She went home and received a telephone call that he had again changed his mind and that she was to report to her normal workplace, while Newton was placed on Administrative Leave.

50. In May 2008, Plaintiff was retaliated against by being made to do things that required more than one person by herself.[2]

51. Plaintiff was retaliated against by having other employees being told of her sexual harassment complaint that was supposed to be confidential.

52. Plaintiff was retaliated against by being required to ride to a job in a patrol unit that had a cage, which Deputy Charlotte Ryan, her supervisor[,] had instructed against.

. . .

54. On July 24, 2008, Plaintiff was retaliated against by being called [into] Lt. David McAnally's office for a counseling for allegedly having her feet in her [fiance]'s lap while on duty.  Lt. David McAnally called Plaintiff into the Bessemer Office and . . . told her that he was the new patrol Lieutenant.  He told her that someone had complained that she was at the Sylvan Springs substation sitting on a couch with her feet in her fiance's lap. Plaintiff asked when this . . . allegedly occurred.  Lt. McAnally said he did not know, but he had to counsel her on this and make sure this type of behavior did not occur at work.  She told him she was aware of that.  He told her that he did not know whether or not this had happened, but to make sure it did not happen again.  Plaintiff told Lt. McAnally that it had not happened and would not ever happen.  She asked again who made these allegations and he said he did not know, but it was brought to him and he was trying to stop it.  Lt. McAnally

---

[2] Apparently, plaintiff is referring to an incident in May 2008, when her then-supervisor required her to carry four 80-pound truck scales by herself.  (*See* doc. 1 ¶ 35.)

required Plaintiff to sign a form stating he had counseled her on her behavior and that she agreed not to let it happen again.  Plaintiff told him that she could not sign something stating she had done this, because that would mean it was true, and it was not.

55.  On August 20, 2008, Plaintiff was called into the Bessemer Office. She was called into a conference room where present were Lt. David McAnally, Lt. Mark Farley, Sgt. Mobley (Internal Affairs)[,] and Captain Cleveland Moore.  Plaintiff was told that she was being called in to complete the counseling session from July 24, 2008, with Lt. McAnally.  Plaintiff explained to Captain Moore her reason for not signing the counseling form. He then asked if she was at work on July 14, 2008.  She told him she was unsure because she had been off work some days in July, and that she would need to check her calendar.  He told her that Deputy Ron Michaels had seen her with her [feet] in her fiance's lap while sitting on the couch at the Sylvan Springs substation.  She explained that she, at no time, had her feet in his lap while she was at work.  Other employees present were Michael Winton, Doug Blanchard, and possibly Allan McClinton.  Plaintiff suggested that Captain Moore question other witnesses who were present, as Michaels'[s] statements were untrue.  At the end of the counseling session, Plaintiff was not asked to sign anything.

56.  On August 24, 2008, Plaintiff filed a grievance with the Personnel Board of Jefferson County regarding why[,] without an official complaint being filed or a proper investigation being performed, . . . she received a performance counseling.

57.  On September 9, 2008, Plaintiff was retaliated against by being required to undergo a polygraph examination to prove that her side of the story regarding Ron Michaels['s] allegations of her having her feet in her fiance's lap was true.

(*Id*. ¶¶ 49-57 [footnote added].)

In June 2008, the Sheriff terminated defendants Stone and Newton.  (*Id*. ¶¶ 36, 38.)

Defendants Stone and Newton appealed their terminations to the Board, which overruled

Stone's termination.  (*Id*. ¶¶ 36, 38, 42.)  Plaintiff's Complaint does not indicate the result

of Newton's appeal.  (*See id*. ¶ 43.)  However, in her Response to the Personnel Board's

Motion to Dismiss, plaintiff asserts, "Both deputies were successful in their appeals and were

reinstated to the Sheriff's department by the Personnel Board." (Doc. 15 at 4.)  For purposes

of determining the Motions to Dismiss, the court accepts plaintiff's assertion that Newton

has been reinstated.

Plaintiff does not allege that the County or the County Commissioners participated in

the investigation of her complaints against Stone and Newton, the decision to punish Stone

and Newton, or the decision regarding their appeals.

### III. DISCUSSION

### A.   JEFFERSON COUNTY COMMISSION AND JEFFERSON COUNTY, ALABAMA

The County and the Commission contend that the claims against them are due to be

dismissed because, "The Complaint fails to state a claim against these Defendants upon

which relief can be granted.  . . . [T]he Jefferson County Commission has no control or

authority over the Sheriff's Department, and . . . Plaintiff is not an employee of Jefferson

County, Alabama." (Doc. 4.)  In her Response, plaintiff contends that the County and/or the

Commission is her joint employer,   (Doc. 14 at 4.)  She contends that, "[Bettye Fine]

Collins[, President of the Jefferson County Commission,] [has] admitted that the County

Commission provides funds to the sheriff's office.  The plaintiff is entitled . . . to determine

the precise relationship in regard to the budgeting, transfer, justification for, use of, and

monitoring [of] the use of these funds." (*Id*. at 8.)   Also, she argues that "the County and

8

the Commission may . . . be found to have acted as an 'employer' or 'agent' under Title VII."

(*Id*. at 10.)  She argues:

> While the complete extent of the County['s] and/or Commission's authority over the Sheriff with respect to policies of sexual discrimination, harassment, and retaliation is unclear at this stage. it is the plaintiff's contention that she is entitled to determine the County['s] and/or Commission's . . . authority with regard to these aspects through the discovery process.  Upon information and [belief], plaintiff avers a good faith basis upon which she expects to discover evidence of a pertinent relationship with regard to policymaking in employment between the County, the Commission and the sheriff.  It is upon this good faith assertion that plaintiff avers that she needs to conduct substantive discovery with these specific defendants in order to adequately respond, at whatever time the Court deems appropriate, to the defendants' Motion regarding the agency and/or joint employer issues as set forth in plaintiff's complaint.
>
> Moreover, even if this Court is to determine at an appropriate time that either of these defendants is not a proper defendant under a Title VII charge of discrimination, the County and Commission would still be proper parties to this suit under Federal Rule of Civil Procedure 19.  Specifically, the County and/or Commission are the entities which paid the plaintiff's salary and would be required to provide to the plaintiff any award of damages or back pay to which she may be found to be entitled.

(*Id*. at 12.)

The court notes that the sole factual allegation linking the County or the Commission to any claim asserted in plaintiff's Complaint is that the County paid plaintiff's salary.  (Doc. 1 ¶ 11.)  This allegation, in light of extensive caselaw recognizing that the Sheriff's employees are ***state*** employees and not ***county*** employees and that the County does not make

policy for the Sheriff's Department,[3] is insufficient to state a claim against the County or the Commission based on the conduct of Stone and Newton or the following investigation and resolution of plaintiff's complaints about their sexual harassment.   Although plaintiff correctly states that whether the County and/or the Commission are joint employers is a question of fact, her Complaint does not state any facts that are "suggestive enough" to allow this court to find that she could possibly establish the County or the Commission is liable for any of the alleged wrongs.[4]  *See Twombly*, 550 U.S. at 556.  The allegations in her Complaint are not sufficient to raise her request for relief against the County and Commission beyond a speculative level.   Therefore, the court finds that plaintiff's Complaint fails to state a claim against the County or the Commission upon which relief can be granted.   The Motion to Dismiss filed by the County and Commission, (doc. 4), will be granted and all claims against the County and the Commission will be dismissed.

---

[3] *See McMillian v. Monroe County*, 520 U.S. 781, 784, 793 (1997); *Lancaster v. Monroe County,* 116 F.3d 1419, 1430 (11th Cir. 1997); *Spears v. Choctaw County Comm'n*, Civil Action No. 07-0275-CG-M, 2009 WL 2365188, at *3-4 (S.D. Ala. July 30, 2009); *Fowler v. Johnson*, 961 So. 2d 122, 134 (Ala. 2006) (quoting *Parker v. Amerson*, 519 So. 2d 442, 445 (Ala.1987) (quoting *Montiel v. Holcombe*, 199 So. 245 (Ala. 1940))).

[4] The court notes that an allegation sufficient to support a claim based on a joint-employer theory must allege that the defendant controlled and/or influenced a relevant aspect of the plaintiff's employment.   *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1245 (11th Cir. 1998); *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294 (11th Cir. 1988). Plaintiff alleges that the County and/or the Commission only controlled or influenced her pay, which is not at issue in her Complaint.  In her Response to the County's/Commission's Motion to Dismiss, plaintiff seems to argue that the they might have influenced some, as yet unknown, aspect of her employment.   This assertion in her brief is insufficient to state a claim against these defendants.

**B. SHERIFF MIKE HALE**

**1. Eleventh Amendment Immunity**

Sheriff Hale argues that he is entitled to Eleventh Amendment immunity as to plaintiff's § 1983 claim and her state-law claims.[5]  The Eleventh Amendment prevents a federal court from exercising jurisdiction over a lawsuit against a state and its agencies, unless that state either consents to be sued or waives its immunity from such suit.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).  This immunity applies to state officials that are sued in their official capacity.  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In Alabama, a sheriff is considered a state official, and, thus, in federal court, he is immune from suit in federal court unless the immunity is waived.  *See id.* (citing *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989)); *see also Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000).  Sheriff Hale has not waived this immunity.  *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287-88 (11th Cir. 2003) (citing *Pennhurst State School*, 465 U.S. at 98-99).  However, Congress has waived the states' Eleventh Amendment immunity for Title VII claims.  *See Wu v. Thomas*, 863 F.2d 1543, 1550 (11th

---

[5] The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

Cir. 1989) (citing and quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456-57 (1976)); *see also* 42 U.S.C. § 2000e(a)-(b).  Because Sheriff Hale is entitled to Eleventh Amendment immunity for all claims except the Title VII claims,[6]  all claims against him except the Title VII claims will be dismissed.

### 2.  Title VII – Retaliation[7]

Hale seeks to dismiss plaintiff's Title VII retaliation claim on the ground that the alleged acts of retaliation "do not amount to an adverse employment action as required to sustain a Title VII claim of retaliation."  (Doc. 6 at 8.)

In order to establish a prima facie case of retaliation in violation of Title VII, plaintiff must establish:  (1) a statutorily protected expression;  (2) an adverse employment action;  and (3) a causal link between the protected expression and the adverse action.  *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993).  To establish an adverse employer action that will support a claim of unlawful retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or

---

[6]Sheriff Hale, in his official capacity, is plaintiff's employer for Title VII purposes. *See Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995).

[7] Hale does not ask the court to dismiss the Title VII discrimination claim against him, except to argue that this Count is asserted against defendants Stone and Newton only.  (*See* doc. 6 at 3.)   Count I of plaintiff's Complaint contains two claims based on sex discrimination: (1) § 1983/Equal Protection claim and (2) Title VII sexual harassment and sex discrimination.  (Doc. 1 ¶¶ 44-47.)  Only plaintiff's § 1983 claim is limited to Stone and Newton.

supporting a charge of discrimination."'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)

(quoting *Washington v. Ill. Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005))).  At this

early stage of the proceedings, the court will not seek to determine whether any or all of the

acts alleged by plaintiff to be retaliatory were sufficient to dissuade a reasonable worker from

complaining about discrimination.  Such determination necessarily requires the development

of the factual record regarding the circumstances of each alleged retaliatory act.  At this point

in the proceedings, the court finds that facts alleged by plaintiff are "suggestive enough to

render [it] plausible" that a reasonable jury could find the alleged conduct was materially

adverse.  *See Twombly*, 550 U.S. at 556; *Burlington*, 548 U.S. at 68.

Hale's Motion to Dismiss plaintiff's Title VII retaliation claim will be denied.

## C.  RANDY STONE and DAVID NEWTON

### 1.  Eleventh Amendment Immunity

Stone and Newton contend that they are entitled to Eleventh Amendment immunity;

the court disagrees.  The Eleventh Amendment only offers immunity to state actors sued in

their official capacity; it does not provide immunity to claims against sheriffs or their

deputies in the individual capacity.  *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).  The Supreme

Court has held:

> [T]he Eleventh Amendment does not erect a barrier against suits to impose
> individual and personal liability on state officials under § 1983.

> To be sure, imposing personal liability on state officers may hamper their performance of public duties.  But such concerns are properly addressed within the framework of our personal immunity jurisprudence.  Insofar as respondents seek damages against Hafer personally, the Eleventh Amendment does not restrict their ability to sue in federal court.

*Id*.

Stone and Newton are sued in the individual capacities only.  Therefore, they are not entitled to Eleventh Amendment immunity.  To the extent their Motions to Dismiss assert that dismissal is appropriate under the Eleventh Amendment such Motions will be denied.

### 2.  Statute of Limitations

Defendants Stone and Newton contend that plaintiff's § 1983 claims and state-law claim accruing prior to July 22, 2007, are time barred.  Plaintiff does not address this issue. (*See generally* doc. 16.)

"Dismissal under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."  *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2003) (quoting *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir.2003))) (internal quotations omitted).

The Supreme Court has held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."  *Owens v. Okure*, 488 U.S. 235, 249-

14

50 (1989).  In Alabama, the general or residual statute of limitations is Ala. Code § 6-2-38(*l*),

which states, "All actions for any injury to the person or rights of another not arising from

contract and not specifically enumerated in this section must be brought within two years."

*See Ex parte Davis*  9 So. 3d 480, 484 (Ala.,2008).  "Federal law determines the date on

which the statute begins to run, and the statute of limitations for a § 1983 action begins to run

from the date 'the facts which would support a cause of action are apparent or should be

apparent to a person with reasonably prudent regard for his rights.'"  *Salas v. Pierce*, 297 F.

App'x 874, 877 (11th Cir. 2008) (quoting *Brown v. Ga. Bd. of Pardons and Paroles*, 335

F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir.

1996))) (unpublished).   "It is well established that a federal claim accrues when the

prospective plaintiff knows or has reason to know of the injury which is the basis of the

action."  *Id*. (quoting *McNair v. Allen*, 515 F.3d at 1174 (quoting *Corn v. City of Lauderdale*

*Lakes*, 904 F.2d 585, 588 (11th Cir.1990))).

     The allegations in plaintiff's Complaint appear to state a hostile work environment

claim.[8]  According to the Supreme Court,

---

[8] The heading for Count I of plaintiff's Complaint states, "Count I: 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution Against Newton and Stone and Title VII Violations of Sexual Harassment and Sex Discrimination."  (Doc. 1 at 9.)  Plaintiff has not alleged any discrete acts of sex discrimination, although she generally alleges that "she was subjected to further discrimination based on her sex."  (*Id*. ¶ 47.)  The court finds that the only sex discrimination claim alleged by plaintiff is based on sexual harassment/hostile work environment.

In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days after the alleged unlawful employment practice occurred. A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice. The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-17 (2002) (internal citations, quotations, and footnote omitted). The analysis for the § 1983 claim is the same – to be timely, plaintiff must allege an act contributing to her hostile work environment occurred within two years before she filed her lawsuit. *See Hildebrandt v. Ill. Dept. of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003) (citing *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir.), *cert. denied* 540 U.S. 876 (2003); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058-61 (9th Cir. 2002).

Plaintiff has alleged a number of acts that allegedly contributed to the hostile work environment that occurred within two years of the date she filed her Complaint. Therefore, the face of her Complaint appears to show that her § 1983 harassment claim is timely.

Newton and Stone's Motion to Dismiss the Section 1983 claims against them on the basis of statute of limitations is due to be denied.

Plaintiff's state-law claims of outrage and invasion of privacy have a two-year statute of limitations. *Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007); *Archie v. Enter. Hosp. and Nursing Home*, 508 So. d 693, 695 (Ala. 1987).  Assault and battery claims have a six-year statute of limitations.  Ala. Code § 6-2-34(1).  To the extent that plaintiff alleges claims for outrage and invasion of privacy accruing before July 22, 2007, such claims are due to be dismissed as barred by the statute of limitations.  Newton and Stone's Motions to Dismiss those claims will be granted; the remainder of their Motions to Dismiss plaintiff's state-law claims as time-barred will be denied.

### 3.  Title VII Retaliation

Defendants Stone and Newton argue that plaintiff's Title VII retaliation claims against them are due to be dismissed because the Complaint does "not mention [these] defendant[s] [or] attribute any improper acts of retaliation to [them]."   (Doc. 11 at 5; doc. 12 at 5.)  Whether or not plaintiff's Complaint can be construed as alleging that either Stone or Newton retaliated against plaintiff is irrelevant.  These individual defendants cannot be held liable under Title VII.  *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) ("To the extent that we have not so held before, we now expressly hold that relief under Title VII is available against ***only*** the employer and not against individual employees whose actions would

constitute a violation of the Act, regardless of whether the employer is a public company or a private company.") (emphasis added; original emphasis deleted).

Nevertheless, the court does not construe plaintiff's Complaint as stating a claim against Stone and Newton, the individual-capacity defendants, for retaliation. Therefore, their Motions to Dismiss the Title VII retaliation claim against them will be denied as moot.

### 4. Insufficient Allegations of Outrage and Invasion of Privacy

Stone and Newton allege that plaintiff's Complaint fails to allege sufficient facts to state a claim for either outrage or invasion of privacy. The court disagrees.

One judge on this court has held that sexual, physical touching is enough to state a cause of action for outrage. *See Brewer v. Petroleum Suppliers, Inc.*, 946 F. Supp. 926, 936 (N.D. Ala. 1996)(Propst, J.)(citing *Busby v. Truswal Sys. Corp.*, 551 So.2d 322, 323-24 (Ala. 1989)).

> [W]hen the sexual impositions are not merely verbal or economic, but become physical impositions, the harasser is no longer attempting to request sexual favors (in exchange for job security), but is instead attempting to force sexual liberties. An employee can decline even the most obscene request to be touched in a sexual manner. An employee cannot decline a physical act that has already occurred. At that point, the harasser's conduct goes beyond the simply base and oversteps the tolerable bounds of a civilized society.

*Id.* Moreover, the Eleventh Circuit, in *Armstrong v. Standard Furniture*, 197 F. App'x 830, (11th Cir. 2006), found the following evidence sufficient to allow a reasonable jury to find that defendant invaded plaintiffs' privacy: "Denson regularly (1) made sexual comments in the workplace; (2) stated 'daily' that he wanted to have sex with Armstrong; (3) groped

18

Armstrong while she was working; and (4) regularly inquired whether Armstrong was menstruating because he wanted some 'cat,'" and "Denson would (1) constantly talk about sex; (2) regularly brush up against [Sims] (3) comment about her legs; and (4) come up to Sims 'licking his tongue out' at her". *Id*. at 834; *see also Edwards v. Hyundai Motor Mfg. Ala., L.L.C.*, 603 F. Supp. 2d 1336, 1356 (M.D. Ala. 2009) (finding that evidence that "[the harasser] made egregious inquiries into [plaintiff's] sex life . . . and also made egregious sexual propositions" was sufficient to support an invasion of privacy claim based on "an intrusion on private matters in a way that could induce humiliation or shame in a person of ordinary sensibilities").

At this point in the proceedings, the court finds that facts alleged by plaintiff are "suggestive enough to render [it] plausible" that a reasonable jury could find for plaintiff and against Stone and Newton on her claims of outrage and invasion of privacy. *See Twombly*, 550 U.S. at 556.   The court finds that plaintiff's Complaint states a claim for relief against Newton and Stone for outrage and invasion of privacy.  Therefore, their Motions to Dismiss Counts V and VI will be denied.

## D.  JEFFERSON COUNTY PERSONNEL BOARD

The Personnel Board contends that plaintiff's Complaint against it fails to state a claim for which relief can be granted because:

> 4.  With respect to her state law claims, Ms. Swindle fails to state a claim upon which relief may be granted because Board does not employ sheriff deputies as a matter of law and the Board cannot be held liable for tortious conduct of a state actor.

5.  With respect to her federal claims, Ms. Swindle fails to state a claim upon which relief may be granted because, as a matter of law, she is not a Board employee and is not part of the Board's classified system.

6.  Ms. Swindle's federal claims are also due to be dismissed as Ms. Swindle failed to exhaust her administrative remedies by not identifying the Board in her EEOC Charge.

(Doc. 8 ¶¶ 4-6.)

## 1.  Title VII – Failure to Exhaust Administrative Remedies

The Board contends that plaintiff's Title VII claims against it are due to be dismissed because she did not name the Board as a Respondent in her EEOC Charge.  The law of this circuit is well settled:

> Generally speaking, the EEOC is charged with the task of investigating allegations of civil discrimination and harassment in the employment context and determining whether there is any reason to believe the allegations are true. Under 42 U.S.C. § 2000e-5, a person who wants to file a lawsuit under Title VII must first file a charge with the Equal Employment Opportunity Commission alleging a Title VII violation and exhaust all remedies provided by the EEOC.  If the conciliation efforts are unsuccessful, the EEOC will inform the parties and issue a letter authorizing the complainant to file a Title VII suit.
>
> Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989).  This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII. *Id.* at 127.  However, courts liberally construe this requirement. *Alvarado v. Board of Trustees*, 848 F.2d 457, 460 (4th Cir. 1988); *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 972, 102 S. Ct. 2234, 72 L. Ed. 2d 845 (1982).  Where the purposes of the Act are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts. *Eggleston v. Chicago Journeymen Plumbers'*

*Local 130*, 657 F.2d 890, 905 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017, 102 S. Ct. 1710, 72 L. Ed. 2d 134 (1982).

> In order to determine whether the purposes of Title VII are met, courts do not apply a rigid test but instead look to several factors including: (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings. *Id*. at 906-07; *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977). Other factors may be relevant depending on the specific facts of the case.

*Virgo v. Riviera Beach Assocs., Ltd*., 30 F.3d 1350, 1358-59 (11th Cir. 1994).

The only Title VII claim asserted against the Personnel Board in plaintiff's Complaint appears to be a retaliation claim based on "being required to undergo a polygraph examination to prove that her side of the story regarding Ron Michaels['s] allegations of her having her feet in her fiance's law was true."[9]  (*See* doc. 1 ¶ 57.)  Plaintiff, in addition to

---

[9]Plaintiff's Complaint alleges:

> 56.  On August 24, 2008, Plaintiff filed a grievance with the Personnel Board of Jefferson County regarding why[,] without an official complaint being filed or a proper investigation being performed, . . . she received a performance counseling.

> 57.  On September 9, 2008, Plaintiff was retaliated against by being required to undergo a polygraph examination to prove that her side of the story regarding Ron Michaels['s] allegations of her having her feet in her fiance's lap was true.

(Doc. 1 ¶¶ 56-57.)  From these two paragraphs the court assumes that plaintiff is complaining that the Personnel Board required the polygraph as part of its investigation of plaintiff's

naming only the "Jefferson County Sheriff['s] Office" in her EEOC charge, did not mention this adverse action.  (Doc. 9, Exs. 2.)  In her Charge, plaintiff alleges:

> On March 26, 2008, I filed sexual harassment claims with the employer and against two deputies I work with.  My immediate Supervisor, at the time, was one of the offenders.  After my complaint, I was retaliated against, in the following respect:  by being told I would have to transfer, by having other employees being told of my complaint, ***by being required to take a polygraph test to prove that my allegations*** [of sexual harassment] ***were true***, by being required to ride to a job in a patrol unit that has a cage, by being required to perform alone . . . duties that required more than one person to perform, and by being issued a written warning for allegedly having my feet in my fiancée's [sic] lap.

(*Id*.)  Her Charge indicates that the last date that discrimination occurred was August 20, 2008.  Therefore, the polygraph examination mentioned in her Charge does not refer to the polygraph examination given to plaintiff on September 9, 2008, regarding the Michaels's report and her counseling.  Because plaintiff's EEOC Charge neither names the Personnel Board as a respondent nor contains any particulars regarding the conduct of the Personnel Board, the court finds that the Personnel Board's Motion to Dismiss any Title VII claims against it is due to be granted and such claims are due to be dismissed.[10]

---

grievance.

Also, plaintiff alleges that she filed a grievance with the Personnel Board regarding her performance counseling, but she does not indicate the result of this grievance.  (Doc. 1 ¶ 56.)  The court will not speculate as to the result of this grievance or that the result constituted an adverse employment action as required to state a Title VII retaliation claim.

[10] Plaintiff contends, "It has not been more than 180 days since the events that would form the basis of any EEOC charge against the Personnel Board have occurred."  (Doc. 15 at 8.)  Therefore, she indicates that she will file another EEOC charge naming the Personnel Board.  (*Id*.)  However, nothing in her Complaint indicates any action by the Personnel Board since December 15, 2008.  (Doc. 1 ¶ 43.)  Therefore, any claims against the Personnel Board

### 2. Section 1983

Plaintiff's Complaint indicates that her § 1983/Equal Protection claim is against Newton and Stone only.  (*See* doc. 1 at 9.)  Moreover, the Complaint contains no allegations that the Personnel Board took any action against plaintiff that violated her right to equal protection under the law.[11]  Therefore, to the extent that plaintiff contends her Complaint states a claim against the Board under § 1983, such claim is due to be dismissed.

### 3. State-Law Claims

The Personnel Board contends that it cannot be held liable for the tortious conduct of Stone and Newton because it was not their employer.  Plaintiff argues, "[T]he Jefferson County Personnel Board exercises control over the Jefferson County Sheriff's Department

_____

would appear to be time-barred.

[11] An Equal Protection claim based on employment discrimination requires proof of the same elements as a Title VII claim:

> We pause to note that discrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework.  *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1170 (10th Cir. 2008) (citations omitted) ("The elements of a hostile work environment claim under § 1981 are the same as those under Title VII."); *Cross v. Alabama*, 49 F.3d 1490, 1507-08 (11th Cir. 1995) (noting, in the context of evaluating the merits of an equal protection claim, that "[w]hen section 1983 is used as a parallel remedy for [a] violation of . . . Title VII . . ., the elements of the two causes of action are the same.").

*Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Abel v. Dubberly*, 210 F.3d 1334, 1338 (11th Cir. 2000); *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir.1985)).

to at least the extent that the deputy sheriffs who were terminated based on plaintiff's complaints of sexual harassment were able to appeal to the Personnel Board for reinstatement." (Doc. 15 at 4.)  In her Complaint, plaintiff alleges that the Personnel Board "condoned, authorized, and/or ratified Defendant Newton's and Defendant Stone's conduct because [it] knew or should have known of the [tortious conduct] and failed to take any preventative and/or corrective actions to stop [the] unlawful conduct." (Doc. 1 ¶ 65; *see also id*. ¶¶ 69, 73, 75-78.)  However, she does not allege that the Board was aware of the alleged tortious, harassing conduct of Newton and/or Stone at any time prior to their terminations and appeals.

Plaintiff's Complaint does not allege that the Personnel Board is vicariously liable for the tortious conduct of Newton and Stone.  Rather, she alleges that the Personnel Board is directly liable based on its own conduct that "condoned, authorized, and/or ratified" Newton and Stone's conduct.  "[An] employer is directly liable for its own conduct if it authorizes or participates in the employee's acts or ratifies the employee's conduct after it learns of the action." *Potts v. BE&K Const. Co.*, 604 So. 2d 398, 400 (Ala. 1992).  To show that an employer ratified its employee's conduct, the plaintiff must show, among other things, that "the employer failed to take 'adequate' steps to remedy the situation."  *Id*.  However, "[I]f the undisputed evidence shows that the employer, as soon as it was practical to do so after learning of the conduct, took steps to stop the tortious conduct and ***the tortious conduct***

24

*stopped*, the steps taken by the employer were adequate, as a matter of law." *Id*. at 401(emphasis in original).

The Personnel Board notes:

> Ms. Swindle attempts to impute liability to the Board for the Deputy Newton and Deputy Stone's alleged sexual harassment based solely upon the Board's reinstatement of Deputy Stone. In her Response, Ms. Swindle alleges the Board also reinstated Deputy Newton. However, she did not make this allegation in her Complaint and this allegation is not properly before the Court. Nevertheless, Ms. Swindle alleges all of the harassment took place prior to Deputy Stone's reinstatement. Ms. Swindle does not allege the harassment continued after Deputy Stone or Deputy Newton were reinstated by the Board. Thus, Ms. Swindle has failed to allege facts in her complaint which would render the Board liable for the sexual harassment of Deputy Stone or Deputy Newton.

(Doc. 18 at 11 n.2.) The court agrees. The Complaint contains no allegations that, after the Personnel Board learned of their allegedly tortious conduct, Newton and/or Stone assaulted or battered plaintiff, invaded her privacy, or had any contact – tortious or otherwise – with plaintiff. Therefore, plaintiff has not alleged facts sufficient to state a claim against the Personnel Board based on its ratification or authorization of the conduct or Newton and/or Stone by overturning their terminations. The Personnel Board's Motion to Dismiss is due to be granted and plaintiff's state-law claims based on its alleged ratification of the tortious conduct of Newton and Stone are due to be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that the Motions to Dismiss filed by the Personnel Board, (doc. 8), and the County and the County Commission, (doc. 4), are

due to be granted.  The Motions to Dismiss filed by Hale, Stone, and Newton, (docs. 6, 11, and 12), are due to be granted in part and denied in part.  An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE** this 30th day of March, 2010.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE